IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STX, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-14-3511 |
| EPOCH LACROSSE, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff STX, LLC ("Plaintiff" or "STX") brings this action against Defendant Epoch Lacrosse, LLC ("Defendant" or "Epoch"), alleging infringement of U.S. Patent 7,955,199 (the "'199 Patent"). Currently pending before this Court are four related memoranda: Epoch's Opening Claim Construction Brief (ECF No. 28), STX's Opening Claim Construction Brief (ECF No. 30), STX's Responsive Brief (ECF No. 31), and Epoch's Responsive Brief (ECF No. 32). In these memoranda, the parties request that this Court construe certain claim language from the '199 Patent pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The issues have been fully briefed and this Court held a *Markman* hearing on August 5, 2015. This Memorandum Opinion sets forth this Court's construction of the claim language discussed in the parties' briefs and during the *Markman* hearing.

## BACKGROUND

The facts set forth below are drawn from the '199 Patent (ECF No. 1-1), Plaintiff's

1

Complaint (ECF No. 1), Plaintiff's Opening Claim Construction Brief (ECF No. 30), Defendant's Opening Claim Construction Brief (ECF No. 28), Plaintiff's Responsive Claim Construction Brief (ECF No. 31), and Defendant's Responsive Claim Construction Brief (ECF No. 32).

The Plaintiff's Patent, the '199 Patent, is entitled "Lacrosse Head Having a Grooved Frame Member and Independent Stop." It describes a lacrosse head wherein the frame is partly or entirely of a grooved construction so as to "provide lightness while retailing the strength and durability of the prior art lacrosse stick heads." '199 Patent, col. 1, ll. 29-31. Among other attributes, the lacrosse head has an "independent stop that is separated from the sidewalls in order to reduce weight." The terms to be construed in this case stem from the claims concerning the "independent stop."

The novelty of the "independent stop," according to the '199 Patent, is in the invention's separation from the sidewalls and protrusion into the scoop. A conventional ball stop, as seen in Figure 1 below, is a U-shaped curve at the throat of the lacrosse head, where the sidewalls meet. In contrast, the independent stop of the '199 Patent,

> [b]y moving the location of the stop 20 towards the scoop and maintaining the fixation location for the handle, the length of the head is increased . . ., which allows for a decrease in the length of the handle . . . Players deem it advantageous to play with the shortest handles allowable under lacrosse game rules.

*Id.* at col. 5, ll. 1-7. Moreover, an independent stop with a convex surface can "act like a bubble and flex or give when the ball makes contact with it." *Id.* at col. 5, ll. 15-17. The added flexibility "aids in securing the ball in the pocket." *Id.* at col. 5, l. 18. Ball control is further strengthened by the position of the independent stop above the stringing holes—the

2

ball can be "secured under the ball stop," thereby making it harder to dislodge. *Id.* at col. 5, ll. 19-22. The figures below show a lacrosse head with a conventional ball stop (Figure 1), as compared to an embodiment of the '199 Patent device (Figure 5).




Inventors Richard Tucker, Jr. and David Reeb (together, the "inventors")[1] submitted their patent application to the United States Patent and Trademark Office ("USPTO"), and a primary examiner of the application, Mike Chambers (the "Examiner"), rejected it for several reasons. Pertinent to this case, the Examiner found that the independent stop and its components were not patentable because prior art, namely by Filice,[2] Ahlenfeld,[3] Morrow,[4] and Tucker, Sr.,[5] anticipated the claims relevant to the instant claim construction. *See* Compl.

---

[1] Richard Tucker, Jr. and David Reeb, the inventors of the "Lacrosse Head Having a Grooved Frame Member and Independent Stop," submitted the patent application for this invention. *See* '199 Patent, at 1. The inventors then assigned the '199 to Wm. T. Burnett IP, LLC, an STX-related IP holding entity, which licensed the '199 Patent exclusively to STX. Pl.'s Opening Claim Construction Brief, 2, ECF No. 30. This license included the right to sue to enforce the '199 Patent. *See* Compl. ¶ 10.
[2] U.S. Patent Application Publication No. 2005/0064963 to Filice, et al. ("Filice").
[3] U.S. Patent No. 4,270,756 to Ahlenfeld, et al. ("Ahlenfeld").
[4] U.S. Patent No. 5,568,925 to Morrow, et al. ("Morrow").
[5] U.S. Patent No. 3,507,495 to Tucker, Sr., et al. ("Tucker, Sr.")

3

Ex. D, 51-55, ECF No. 1-4. In response to the Examiner's rejections, the inventors submitted an amended application, which the USPTO ultimately accepted. The amended application added a more exact description of the independent stop in claims 1 and 10. *See id.*, at 34-36. Specifically, claims 1 and 10 were amended to emphasize the central protrusion of the independent stop and its separation from sidewalls. *See id.*

In addition to these amendments, the inventors submitted "Remarks" in which they justified the amendments to their original patent application and distinguished their invention from prior art. With regard to the "stop member," the inventors explained that "none of the cited references disclose . . . a stop member formed integrally with a throat portion, wherein the forward-most point on the stop member that lies on a central longitudinal axis extends forwardly of an end of at least one of the top rails and bottom rails." *Id.*, at 40. Filice, for example, disclosed a lacrosse head with a "plurality of . . . bar-like fingers" on the interior of the frame. *Id.* These "fingers" sought to "guide and direct a lacrosse ball into *center* of the pocket." *Id.*, at 40-41 (emphasis in original). Any "fingers" that ran along a central axis would direct the ball to either side of the pocket, thereby defeating the intended purpose of Filice. *Id.*, at 41.

Moreover, the inventors emphasized that the forward-protruding stop member is "formed integrally with the throat portion," a characteristic lacking in Ahlenfeld and Tucker. *Id.* The stop member is "disposed forward of adjacent interior surfaces being formed of common material," whereas the "resilient pads" of Tucker and Ahlenfeld are "not made of the same material as adjacent surfaces and also are not disposed forward of [these] surfaces . . ." *Id.*, at 43. On the basis of the amendments and remarks, the USPTO accepted the revised

patent application and issued the '199 Patent on June 7, 2011.

On November 7, 2014, the Plaintiff filed its Complaint (ECF No. 1), alleging that the Defendant willfully infringed the '199 Patent. In response, Defendant filed its Answer and Counterclaim (ECF No. 15), asserting non-infringement and invalidity of the '199 Patent. On April 21, 2015, the parties submitted their Joint Claim Construction Statement (ECF No. 72) to this Court. In the parties' joint statement, the parties identified four terms in dispute and two terms on which the parties agreed as to the construction.[6] The four disputed terms or phrases that require construction are: (1) "stop member;"[7] (2) "formed integrally;"[8] (3) "attachment member;"[9] and (4) "separated from the socket."[10] *See* Joint Claim Construction Statement, at 1.

Claim 1 of the '199 Patent and provides the context for "stop member" and "formed integrally."[11] Claim 1 provides as follows:

> 1. A lacrosse head, comprising:
>    (a) a throat portion comprising a stop member at a forward end and a socket portion at a rearward end;
>    (b) a scoop portion;
>    (c) a first sidewall having a top rail and a bottom rail that extend generally from the throat portion to the scoop portion;
>    (d) a second sidewall having a top rail and a bottom rail that

---

[6] The agreed terms are: (1) "ball-contacting surface," which is construed as "Any portion of the stop member capable of contacting a lacrosse ball;" and (2) "non-contiguous," which is construed as "Stop member not touching or connected to the first and second side walls for at least a portion of its length." Joint Claim Construction Statement, 2, ECF No. 27.
[7] The term "stop member" appears in claims 1, 7, 8, 9, 10, 13, 14, and 22. Joint Claim Construction Statement, at 1.
[8] The term "formed integrally" appears in claim 1. *Id.*
[9] The term "attachment member" appears in claims 7, 8, 21, and 22. *Id.*
[10] The term "separated from the socket" appears in claim 9. *Id.*
[11] Claim 1 is an independent claim. Under 35 U.S.C. § 112(c), a claim "may be written in independent or, if the nature of the case admits, in dependent . . . form." According to the glossary of the USPTO, an independent claim is one "that does not refer back to or depend on another claim." In short, an independent claim stands on its own.

> extend generally from the throat portion to the scoop portion; and a central longitudinal axis extending through the mid-point of the scoop portion and the mid-point of the throat portion;
>
> (e) wherein the stop member is formed integrally with the throat portion, and wherein the forward-most point on the stop member that lies on the central longitudinal axis extends forwardly of an end of at least one of said top rail of either the first or second sidewall and said bottom rail of either the first or second sidewall.

'199 Patent, col. 5, l. 51-col. 6, l. 2.

Claims 7 and 8 of the '199 Patent provide the context for "attachment member."[12]

Claim 7 provides as follows:

> 7. The lacrosse head of claim 1, further comprising an attachment member attached to the stop member, the attachment member being formed of a material different from that of the stop member.
>
> 8. The lacrosse head of claim 1, further comprising an attachment member attached to the stop member, the attachment member being formed of a more resilient material than that of the stop member.

'199 Patent, col. 6, ll. 13-21.[13]

Finally, claim 9 provides the context for "separated from the socket."[14] Claim 9 provides as follows:

> 9. The lacrosse head of claim 1, the throat portion further comprising a socket for receiving a shaft, and wherein the stop member is separated from the socket and is of hollow or semi-hollow construction.

'199 Patent, col. 6, ll. 22-25.

STX and Epoch each submitted a claim construction brief (ECF Nos. 30 & 28,

---

[12] Claim 7 is a dependent claim. A dependent claim is one that "contain[s] a reference to a claim previously set forth and then specif[ies] a further limitation of the subject matter claimed." 35 U.S.C. § 112(d). A dependent claim is "construed to incorporate by reference all the limitations of the claim to which it refers." *Id.*
[13] Claims 21 and 22 mirror claims 7 and 8, respectively, but refer to claim 10 as the independent claim. *See* '199 Patent, col. 8, ll. 1-8.
[14] Claim 9 is a dependent claim.

respectively), as well as a responsive claim construction brief (ECF Nos. 31 & 32, respectively). They also advanced their arguments at the *Markman* hearing held on August 5, 2015.

## CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389-90 (1996). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). In interpreting a claim, a court should look first to the intrinsic evidence, *i.e.*, the patent itself, including the claims and the rest of the specification, and if in evidence, the prosecution history. *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted). Although it is within the sound discretion of a court to use extrinsic evidence as an aid in construing a claim, extrinsic evidence is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319. Claim construction is a matter of law, but a district court may make findings of fact necessary to the claim construction analysis. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841-42 (2014).

Generally, courts should construe a claim term to mean "what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the

context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Thus, the specification is "always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  *Id.* at 1315 (quoting *Vitrionics*, 90 F.3d at 1582) (internal quotation marks omitted).  Yet, courts should not make the mistake of "reading a limitation from the written description into the claims." *Id.* at 1320.  The Federal Circuit has "repeatedly warned against confining the claims" to the embodiments described in the specification.  *Id.* at 1323.

Although claim terms are entitled to a "heavy presumption that they carry their ordinary and customary meaning," *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007), this presumption is overcome in two cases.  First, a party challenging the ordinary meaning of a claim term may prevail "where the patentee has chosen to be his own lexicographer." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (internal quotation marks omitted).  Second, the presumption for ordinary meaning will be rebutted "if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Phillips*, 415 F.3d at 1319 (quoting *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)).  A court must examine the prosecution history "to determine whether the patentee has relinquished a potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference." *Id.*  As with the specification, the prosecution history "provides evidence of how the PTO and the inventor understood the patent" and represents the patentee's attempt "to explain and obtain the patent."  *Id.* at 1317.  As the prosecution history "represents an ongoing

negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Where a patentee unequivocally relinquishes a potential claim construction by disavowing "a certain meaning to obtain his patent," the doctrine of prosecution disclaimer attaches and "narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

## ANALYSIS

### A. Construction of "stop member"

The term "stop member" appears throughout the '199 Patent, often interchanged with the terms "independent stop" and "ball stop." *Compare* '199 Patent, col.1, ll. 26, 61; with '199 Patent, col. 2., ll. 44, 48; and '199 Patent, col. 4, l. 43. The Plaintiff initially argues that "stop member" needs no construction beyond "That which is depicted by Reference 20 in Figures 1 and 5-8." However, if this Court requires a construction of words, not drawings, then STX asks this Court to reject Defendant's construction as inadequate and unduly restrictive. In contrast, Epoch contends that its construction, "An element serving as a ball rest; also a ball stop; also comprising a ball-contacting surface," is the only plausible construction afforded by the intrinsic evidence of the '199 Patent.

Both parties' definitions originate in the language of the '199 Patent and accompanying prosecution history. While the Plaintiff refers to drawings to define "stop member," the Defendant pulls piecemeal from the prosecution history to advocate for its detailed, restrictive construction. This Court is not inclined to construe "stop member"

simply as a reference point in a drawing. Drawings in a patent certainly may serve as "informative and significant disclosure[s]" for purposes of claim construction, but they are not the sole arbiter of a term's construction. *Vas-Cath Inc. v. Mahurkar*, 955 F.2d 1555, 1564-65 (Fed. Cir. 1991) (explaining that, in the case of complex "electrical and chemical patents," the "only informative and significant disclosure . . . is by means of circuit diagrams or graphic formulae"). The '199 Patent describes a lacrosse head, not an electrical or chemical device. Given the treatment of "stop member" in the '199 Patent, as well as the representations of the prosecution history, a construction using words is possible.

Yet, Defendant's construction fails to capture the full meaning of "stop member." Limiting this term purely to an "element serving as a ball rest . . . ball stop . . . [also] a ball-contacting surface" ignores necessary characteristics of a "stop member." Due to the inadequacies of both parties' proposed constructions, this Court must craft a definition that captures the true scope of the disputed term. In so doing, this Court notes that the language of the '199 Patent uses "stop member," "independent stop," and "ball stop" interchangeably, the term "stop member" incorporates the elements of its companion terms. The '199 Patent assigns these terms the reference number 20 when illustrating the various embodiments of the device. *See* '199 Patent, Figures 1, 5-8. Of particular significance to the task at hand, "20" points to that portion of the frame that rises from the throat section. *See, e.g., id.* This observation is reinforced by the inventors' own response to the Examiner. In distinguishing the '199 Patent from Filice, the inventors emphasized that the "stop member" extends forwardly" as a "protruding element" rising from the base of the frame. Compl. Ex. D, at 40-41. This protrusion was a necessary and distinctive element of the "stop member."

10

Although the Defendant's construction ignores the "protruding element" of the "stop member," it correctly identifies certain necessary elements of the disputed term. First, the '199 Patent refers to the "stop member" as a "ball stop" throughout the specification. *See, e.g.*, '199 Patent, col. 1, ll. 60-61; col. 2, ll. 44, 48; col. 4, l. 43. Second, the specification explains that the "stop member," denoted as "20" in Figures 1-5, "serv[es] as a ball rest [and] sits at the forward end of the throat section[.]" '199 Patent, col. 2, ll. 44-45. Thus, according to the plain language of the '199 Patent, the "stop member" serves as a "ball stop" or "ball rest."

Yet, Epoch's third asserted element, "also comprising a ball-contacting surface," is not similarly necessary to the "stop member." The Defendant argues that the inventors specifically disclaimed a construction of "stop member" that does not include "ball-contacting surface" when distinguishing their device from those of Ahlenfeld and Tucker. When an inventor "us[es] words or expressions of manifest exclusion or restriction," then those words signify "a clear disavowal of claim scope." *Phillips*, 415 F.3d at 1319 (internal citation omitted). A review of the prosecution history, however, reveals no such "words . . . of manifest exclusion" indicating that the "stop member" must comprise a "ball-contacting surface." The inventors used this phrase to differentiate the "stop member" from the throats of the Ahlenfeld and Tucker devices. *See* Compl. Ex. D, at 42-43. The throats of these devices, due to their placement below the base of their respective frames, physically cannot come into contact with the ball when it enters the lacrosse head. Def.'s Opening Claim Construction Brief Ex. 5, 21, 34 ECF No. 28-5 (Ahlenfeld, Figure 1 and Tucker, Figure 1). The inventors' remarks merely point out this distinguishing factor, rather than explicitly

attaching "ball-contacting surface" to the meaning of "stop member." The "stop member" identified in the '199 Patent is the entire protrusion—it is capable of coming into contact with a ball by virtue of sitting above the frame, but not necessary that it do so. As this Court made very clear during the *Markman* hearing, such a construction would remove the term from the context in which is arises in the '199 Patent and accompanying prosecution history.

In sum, neither party's construction offers a complete definition of the term "stop member." Given the language of the '199 Patent and its related intrinsic evidence, this Court will construe "stop member" to mean the *"protruding portion of frame, beyond the throat, serving as a ball rest or ball stop."*

### B. Construction of "formed integrally"

In response to the Examiner's rejection of their patent application, the inventors amended claim 1 to add the term "formed integrally" to describe the relationship between the "stop member" and the "throat portion." Compl. Ex. D, at 34. At the *Markman* hearing, Plaintiff asserted that "formed integrally" should be construed to mean "formed in the same process and of the same material." *See* Joint Claim Construction Statement, at 1. In contrast, Defendant argued that the term should be construed only to mean "When formed, it is integral." The parties thus asked this Court to construe the disputed term. On August 10, 2015, however, STX filed a Notice (ECF No. 42) with this Court signifying its acceptance of Epoch's construction. Accordingly, the term "formed integrally" is construed to mean *"When formed, it is integral."*

### C. Construction of "attachment member"

The claim term "attachment member" is found in claims 7 and 8 of the '199 Patent and describes an element "attached to the stop member . . . [and] form[ed] of a more resilient material than the stop member." '199 Patent, col. 6, ll. 13-21. At the *Markman* hearing, the Plaintiff initially argued that this term needed no construction beyond the plain language of the claims in which it appeared. Should this Court require a more precise construction, STX offered "A stop pad adhered to a stop member" as its preferred meaning. The Defendant countered that Plaintiff's construction, like any attempt at defining "attachment member," must fail, as the term is indefinite under 35 U.S.C. § 112(b).

Under 35 U.S.C. § 112(b), claims must "particularly point[] out and distinctly disclaim[] the subject matter which the inventor . . . regards as the invention." A claim that fails to define the subject matter with the requisite particularity is indefinite. A claim term that is indefinite may not be construed, as a matter of law. *Enzo Biochem v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). An indefinite claim is necessarily an invalid claim, even though the claims of a patent are "presumed valid[.]" 35 U.S.C. § 282(a). A party asserting invalidity bears the burden of establishing invalidity with "'clear and convincing evidence.'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2130 n.10 (2014) (quoting *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2242 (2011)). This presumption of validity "incorporates that definiteness requirement [of 35 U.S.C. § 112(b)] by reference." *Nautilus*, 134 S. Ct. at 2130 n.10 (quoting from the available defenses under 35 U.S.C. § 282(b)(3) ("Invalidity of the patent or any claim in suit for failure to comply with . . . any requirement of section 112 . . .")).

To determine whether a claim term is indefinite, a court considers the term "from the perspective of someone skilled in the relevant art," not from the perspective of the general public. *Nautilus*, 134 S. Ct. at 2128 (citing *Carnegie Steel Co v. Cambria Iron Co.*, 185 U.S. 403, 437 (1902)). § 112(b) thus commands that "a patent's claims . . . inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129. This standard ensures that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id.* (quoting *Minerals Separation, Ltd. V. Hyde*, 242 U.S. 261, 270 (1916)). In conducting this inquiry, a court may make findings of fact regarding indefiniteness, but indefiniteness remains a matter of law.[15] *Teva*, 135 S. Ct. at 841-42, 852.

In this case, the term "attachment member" is not indefinite, and thus susceptible to construction. This Court notes that "attachment member" appears only in the claims of the '199 Patent, and not in the specification or prosecution history. Yet, any absence from the prosecution history or specification does not necessitate an automatic finding of indefiniteness. The claims in which "attachment member" appears leave no uncertainty as to the meaning of the term. *See* '199 Patent, col. 6, ll. 13-21; col. 8, ll. 1-8. An attachment member is simply an element "formed of a [different and] more resilient material than that of the stop member" that is attached to the stop member. *Id.*, col. 6, ll. 16-21. As this Court explained at the *Markman* hearing, any individual skilled in the art of lacrosse head design would understand the meaning of this term. Hearing Tr. 110:5-22.

---

[15] The United States Supreme Court noted in *Nautilus* that it will "leave . . . for another day" the question of whether the subsidiary factual inquiries related to indefiniteness "trigger the clear-and-convincing-evidence standard[.]" *Nautilus*, 134 S. Ct. at 2130 n.10.

This Court is empowered to make factual findings to determine whether a claim term is indefinite as a matter of law. *Teva*, 135 S. Ct. at 852. Under this authority, this Court thereby holds that "attachment member" is not indefinite under 35 U.S.C. § 112(b).[16] After discussing the proper construction with the parties during the hearing, this Court will construe "attachment member" to mean *"an element made of material that is more resilient than that of the stop member, which is attached to the stop member."* Hearing Tr. 111:10-12.

**D. Construction of "separated from the socket"**

Finally, this Court is asked to construe the term "separated from the socket." The parties' proposed constructions are very similar. STX contends that the term should be construed to mean "Spaced from but contiguous with the socket." Epoch, on the other hand, argues that the term is best construed as "Spaced from the socket." At the *Markman* hearing, Plaintiff's counsel acknowledged the absence of any substantive justification for the addition of "but contiguous with" to STX's proposed construction. Plaintiff's counsel agreed to accept Defendant's construction. Accordingly, "separated from the socket" is construed to mean *"spaced from the socket."*

## CONCLUSION

For the reasons stated above, the disputed claim terms are construed as follows:

1. "stop member" is defined as the *"protruding portion of frame, beyond the throat, serving as a ball rest or ball stop;"*

2. "integrally formed" is defined as *"When formed, it is integral;"*

---

[16] Extrinsic evidence accords with this finding. A court may look to extrinsic evidence to corroborate its interpretation of a claim term. *See Conoco Inc. v. Energy & Envtl. Int'l*, 460 F.3d 1349, 1362 (Fed. Cir. 2006) (wherein the Federal Circuit confirmed its interpretation of a claim term against the extrinsic evidence).

3. "attachment member" is defined as *"an element made of material that is more resilient than that of the stop member, which is attached to the stop member;"* and

4. "separated from the socket" is defined as *"spaced from the socket."*


A separate Order follows.


Dated:       August 14, 2015                    \_\_\_\_\_/s/_____
                                                Richard D. Bennett
                                                United States District Judge